**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                                  Case No.  07-32621

ANGELA C. DAVISON

        Debtor

**MEMORANDUM ON MOTION TO
DECLARE VIOLATIONS OF THE
AUTOMATIC STAY AND TO IMPOSE SANCTIONS**

**APPEARANCES:**    JUSTIN A. BRACKETT, ESQ.
                              BRENT TRAVIS STRUNK, ESQ.
                                1104 Merchants Drive
                                Suite 101
                                Knoxville, Tennessee  37912
                                Attorney for Debtor

                                WADE M. BOSWELL, ESQ.
                                Post Office Box 221
                                Knoxville, Tennessee  37901
                                Attorney for Fred Kanipe and Jeffrey Kanipe

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court upon the Amended Motion to Declare Violation of the Automatic Stay and to Impose Sanctions (Motion for Sanctions) filed by the Debtor on October 25, 2007, averring that Quick Money and its owners and agents, Fred Kanipe and Jeffrey Kanipe, deposited a check on August 31, 2007, after being sent notice of the Debtor's bankruptcy case, in willful violation of the automatic stay of 11 U.S.C. § 362(a) (2005).

An evidentiary hearing was held on January 28, 2008. The record before the court consists of the undisputed facts set forth in the Stipulation of Undisputed Facts filed by the parties on January 22, 2008, nine exhibits introduced into evidence, along with the testimony of two witnesses, Jeff Kanipe and the Debtor.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O) (2005).

# I

Fred Kanipe is the sole proprietor of Quick Money, a check cashing service operating under the "Deferred Presentment Services Act," as authorized by Tennessee Code Annotated §§ 45-17-101, *et seq.*, which is located at 962 W. Highway 11E, New Market, Tennessee, and Jeff Kanipe is the manager. Fred Kanipe had no involvement in the day-to-day business operations of Quick Money. On August 1, 2007, the Debtor, through her execution of a Deferred Presentment Services Agreement (Agreement), obtained a $200.00 personal loan from Quick Money. TRIAL EX. 2. Under the terms of the Agreement, the Debtor contemporaneously delivered to Quick Money check #168 drawn on her checking account at US Bank dated August 1, 2007, payable to Fred Kanipe in the

amount of $230.00, which Quick Money agreed to hold until the September 1, 2007 "Presentment/Due Date" before depositing it.  TRIAL EX. 2; TRIAL EX. 3.

On August 16, 2007, the Debtor filed the Voluntary Petition commencing her case under Chapter 7 of the Bankruptcy Code, listing Quick Money in her schedules as a nonpriority unsecured creditor holding a claim in the amount of $230.00.  TRIAL EX.7.  On the evening of Friday, August 31, 2007, Quick Money deposited the Debtor's $230.00 check into its account with BB&T Bank, and the check cleared the Debtor's account at US Bank on Tuesday, September 4, 2007, leaving a negative balance.  Additionally, on September 4, 2007, the following five checks written by the Debtor were returned by US Bank due to insufficient funds:  (1) check #191 dated August 26, 2007, payable to Food City in the amount of $116.38; (2)  check #192 dated August 27, 2007, payable to IBC Bakery in the amount of $17.98; (3)  check #193 dated August 27, 2007, payable to Kenjo Market in the amount of $22.42; (4)  check #194 dated August 29, 2007, payable to Kenjo Market in the amount of $26.85; and (5)  check #195 dated August 30, 2007, payable to Kenjo Market in the amount of $39.46.  *See* TRIAL EX. 5.  The Debtor was charged with returned check charges, overdraft charges, and insufficient funds charges totaling $296.00.  TRIAL EX. 11.  She has also received a collection notice and demand for payment of $47.98 from Nexcheck as a result of one of the returned checks.  TRIAL EX. 12.

The Debtor's attorney, Justin Brackett, first contacted Jeff Kanipe and Quick Money by telephone sometime between September 5, 2007, and September 7, 2007, and at various times thereafter, concerning the implications of cashing the Debtor's check post-petition. On September 7, 2007, Mr. Brackett mailed a letter to Quick Money stating that it was in violation of the automatic

stay and advising that it must immediately refund the $230.00 check paid out of the Debtor's account post-petition. TRIAL EX. 8. Offers to return the $230.00 were made by Jeff Kanipe to Mr. Brackett on September 5, 2007, and again on October 17, October 18, and October 23, 2007. The Debtor filed her initial Motion for Sanctions on September 26, 2007, amending it on October 25, 2007, to include individual averments concerning Fred Kanipe and Jeffrey Kanipe. On November 7, 2007, a check in the amount of $230.00, payable from the trust account of Quick Money's counsel, was transmitted to the Debtor's counsel.

## II

The commencement of the Debtor's bankruptcy case triggered the protection of the automatic stay of § 362(a), which provides, in material part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301 . . . operates as a stay, applicable to all entities, of—
>
> . . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362. The automatic stay remains in effect during the pendency of the bankruptcy case until terminated by the court or by operation of law, providing debtors with "'a breathing spell' from collection efforts and to shield individual creditors from the effects of a 'race to the courthouse,' thereby promoting the equal treatment of creditors." *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001). Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

Certain actions are, however, expressly excluded from the automatic stay, including "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument[.]" 11 U.S.C. §362(b)(11) (2005). The purpose of this exemption is to "permit[] holders of checks drawn by the debtor to deposit them for the purpose of preserving their rights on the instruments despite the filing of a bankruptcy petition." *In re Roete*, 936 F.2d 963, 966 (7th Cir. 1991) (quoting B. Weintraub, BANKRUPTCY LAW MANUAL § 1.09(4) (1986)).

> Under Tennessee law, a negotiable instrument is defined as follows:
>
> (a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
>> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>>
>> (2) Is payable on demand or at a definite time; and
>>
>> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.
>
>> . . . .
>
> (c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.
>
> . . . .
>
> (f) "Check" means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank, (ii) a cashier's check or teller's check, or (iii) a payee-initiated

> demand draft. An instrument may be a check even though it is described on its face by another term, such as "money order."

TENN. CODE ANN. § 47-3-104 (2001 & Supp. 2007). Pursuant to this statute, a check presented for payment, such as the one in question here, constitutes presentment of a negotiable instrument under Tennessee law and is excepted from the automatic stay. *Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 720 (Bankr. W.D. Tenn. 2000).[1]

The Debtor first argues that § 362(b)(11) does not apply in this case because, under the terms of the Agreement, the Kanipes were not authorized to cash the Debtor's check prior to September 1, 2007, and by doing so, they "voided its negotiability." A negotiable instrument may be tendered in association with a separate agreement or document as follows:

> Other agreements affecting instrument. – Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.

---

[1] The statutory definition of "presentment," as is relevant to this matter, is as follows:

(a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obligated to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawer.

(b) The following rules are subject to chapter 4 of this title, agreement of the parties, and clearing-house rules and the like:

> (1) Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.

TENN. CODE ANN. § 47-3-501 (2001).

6

TENN. CODE ANN. § 47-3-117 (2001). Unquestionably, the Agreement is a document executed in association with the check tendered by the Debtor and states terms expressly concerning Quick Money's handling of the check. The Agreement does not, however, contain any language nullifying the negotiability of the check in the event that it was presented prior to the contractual "Presentment/Due Date," nor does it outline any specific remedies available in the event of an early presentment. While it is true that the Debtor tendered the check to Quick Money along with the Agreement, any alleged breach of the Agreement by the Kanipes does nothing to affect the negotiability of the check, which was not post-dated but was dated August 1, 2007, and was not presented to the Debtor's bank for payment until September 4, 2007. Accordingly, the Debtor's remedies, if any, would fall under the umbrella of breach of contract.[2]

The Debtor also contends that § 362(b)(11) does not apply because the statute requires not only the presentment of a negotiable instrument but also that a creditor give notice of and protest the

---

[2] In defense of the Motion for Sanctions, the Kanipes refer to the Deferred Presentment Services Act which provides, in material part, as follows:

> Any agreement for deferred presentment of a check must be in writing and signed by the maker of the check. The maker of a check shall have the right to redeem the check from the licensee before the agreed date of deposit upon payment to the licensee of the amount of the check. A licensee shall not defer presentment of any personal check for more than thirty-one (31) calendar days after the date the check is tendered to the licensee.

TENN. CODE ANN. § 45-17-112(d) (2007). Mr. Kanipe testified that Quick Money would have violated the Act had the check not been deposited on Friday, August 31, 2007, because the next business day, Tuesday, September 4, 2007, was beyond the thirty days referenced in the statute. He additionally testified that there is a sign posted at the Quick Money office notifying all customers that they must pay off any check on or before the date it is due to prevent deposit of the check.

The Kanipes also raised as a defense the Debtor's own alleged breach of the Agreement's provisions and her certifications therein that she "do[es] not have more than two checks outstanding to any deferred presentment service providers and that the total face value of those checks when combined with the face value of the above described checks does not exceed $500." TRIAL EX. 2. As evidenced by the Debtor's Schedule F and her own testimony, she had several checks outstanding at the time of her bankruptcy filing, which coincided with the time period covered by the Agreement. *See* TRIAL EX. 7.

dishonor of the instrument, and in this case, only the presentment of the check occurred. This argument was advanced and expressly rejected by the Eighth Circuit Court of Appeals:

> Thomas also argues that Money Mart cannot avail itself of § 362(b)(11) because the exception requires that the holder of the negotiable instrument take all three actions listed in the subsection: (1) present the instrument; (2) give notice of its dishonor; and (3) protest the dishonor. According to Thomas, the conjunction "and" makes all three actions mandatory. There is no merit to this construction of the statute. The three actions are merely listed in the order in which they would occur. The statute reflects that an instrument holder is not limited to presenting the check, but also may advise the debtor of its dishonor and of the holder's position regarding that dishonor, without violating the stay.

*Thomas v. Money Mart Fin. Servs., Inc. (In re Thomas)*, 428 F.3d 735, 737 n.3 (8th Cir. 2005). The court agrees that all three events are not required in order to implicate the statute, but instead, that the statute merely lists three distinct and separate actions with respect to negotiable instruments that do not violate the automatic stay. As such, presentment alone of a negotiable instrument is sufficient to fall within the scope of § 362(b)(11).

Nevertheless, the commencement of the Debtor's case triggered the creation of her bankruptcy estate, which consisted of all the Debtor's property and any interests she held in property, including her US Bank checking account and all monies contained therein. *See* 11 U.S.C. § 541(a) (2005). "While § 362(b)(11) provides an exception to the automatic stay for presentment of checks, it does not provide an exception to the broad definition of property of the estate." *In re Meadows*, 379 B.R. 737, 742 (Bankr. S.D. Ohio 2008). As such, the cashing of the Debtor's check post-petition constituted an unauthorized post-petition transfer, which was avoidable by the Chapter 7 trustee pursuant to 11 U.S.C. § 549(a)(1) and (2)(B) (2005). *Meadows*, 379 B.R. at 744; *Franklin*, 254 B.R. at 721; *see also In re Noffsinger*, 316 B.R. 283, 286-87 (Bankr. W.D. Ky. 2004).

8

Nevertheless, the trustee in the Debtor's case abandoned all assets of the estate as burdensome on September 19, 2007.

The automatic stay did not prevent the Kanipes from presenting the Debtor's check for payment, but they had an affirmative duty to turn over the $230.00 pursuant to 11 U.S.C. § 542(a) (2005), which states that any entity in possession or control of property of the estate must turn it over whether it is to be administered by the chapter 7 trustee or exempted by the debtor.

> The language of this turnover provision is mandatory. This mandatory language squares with the language and impact of the automatic stay. By requiring a creditor to turn over property of the estate upon the filing of a bankruptcy petition, § 542(a) prevents the continued exercise of control over property of estates – a violation of the automatic stay. Thus, § 542(a) works to avoid what § 362(a) forbids – the retention of property of the estate after filing.

*Unified Peoples Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1, 4 (B.A.P. 10th Cir. 2005) (footnote omitted). Furthermore, "the duty to return property of the estate is not contingent on any predicate act of the debtor or trustee[.]" *Meadows*, 379 B.R. at 744.

In the Sixth Circuit, a creditor that has repossessed property of the debtor must turnover the property upon the filing of a bankruptcy petition, and the failure to do so "constitutes 'the exercise [of] control over property of the estate' for purposes of the automatic stay in 11 U.S.C. § 362(a)(3)[,]" such that a creditor's post-petition retention of repossessed property of the debtor may constitute a willful violation of the stay. *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 682, 688 (B.A.P. 6th Cir. 1999). If the court determines that a willful violation occurred, and the debtor suffered any injury due to the violation, the statute mandates an award of actual damages,

including costs and attorney's fees, and allows for punitive damages in appropriate circumstances. 11 U.S.C. § 362(k)(1) (2005).

The primary determination is whether a willful violation of the stay occurred. "A violation is willful if 'the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case.'" *Printup*, 264 B.R. at 173 (quoting *Walker v. Midland Mortgage Co. (In re Medlin)*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996)).

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.
>
> Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*Printup*, 264 B.R. at 173 (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)); *see also In re Dunning*, 269 B.R. 357, 362 (Bankr. N.D. Ohio 2001) (a willful violation of the automatic stay does not require a specific intent to violate the stay).

There is no dispute that Quick Money was a scheduled creditor in the Debtor's case; however, Mr. Kanipe testified that he had no knowledge of the Debtor's bankruptcy filing until notice was received on either Tuesday, September 4, 2007, or Wednesday, September 5, 2007, after the Debtor's check had been deposited. He also testified that, at this time, Quick Money did not have a mailbox, but that all mail was delivered by a postal service employee directly to the business during business hours, was delivered sporadically, and was not necessarily delivered every day. After receiving notice of the Debtor's bankruptcy case, Mr. Kanipe testified that he talked to the

Debtor's attorney, Mr. Brackett, and an attorney named Bob Ogle concerning Quick Money's obligations following the bankruptcy filing. Mr. Kanipe testified that he told Mr. Brackett the first time he talked with him before September 7, 2007, that he would return the $230.00 to the trustee but that Mr. Brackett insisted he send the money to the Debtor. Specifically, Mr. Kanipe testified that "I told [Mr. Brackett] I'd be more than happy, the very first time he contacted me, to send [the money] to the trustee," but that "[Mr. Brackett] wouldn't accept it that way." Mr. Kanipe also testified that he talked to someone in the Chapter 7 Trustee's office and with Patricia Foster in the United States Trustee's office. Mr. Kanipe's testimony was not refuted by the Debtor.

Mr. Kanipe further testified that he asked the Debtor's attorney, Mr. Brackett, to send him a letter on his letterhead confirming their conversation, his relationship to the Debtor, and where to send the funds. Mr. Kanipe then received a letter from Mr. Brackett in early October 2007, which was dated September 7, 2007, and post-marked September 10, 2007. Mr. Kanipe attributed the delay in receiving the letter to a forwarding order directing that Quick Money's mail be forwarded to a new address, "PO Box 20864, Knoxville, TN 37940-1864."[3] *See* TRIAL EX. 8; TRIAL EX. 9. He then received the Motion for Sanctions shortly thereafter and appeared for the initial hearing before the court on October 18, 2007. Mr. Kanipe testified that he spoke with the Debtor directly on that day and offered again to return the $230.00, but she stated that she could not do anything without talking to her attorney first. Payment was made to the Debtor's attorney by the Kanipes' attorney on November 7, 2007.

---

[3] The record does not reflect when the forwarding order was given to the post office.

The court finds, based upon the undisputed testimony of Mr. Kanipe, that Quick Money and the Kanipes did not willfully violate the automatic stay. Mr. Kanipe did not learn of the Debtor's bankruptcy until September 4 or 5, 2007. Shortly after learning that the Debtor had filed her case, Mr. Kanipe spoke with the Debtor's attorney, Mr. Brackett, someone in the Chapter 7 Trustee's office, and Ms. Foster in the United States Trustee's office to find out what steps needed to be taken to return the Debtor's funds. He testified that it was his understanding that the $230.00 should have been sent to the Chapter 7 Trustee and that he asked the Debtor's attorney for confirmation of his representation of the Debtor and information concerning returning the funds to the Trustee, but that he did not receive the September 7, 2007 letter from the Debtor's attorney until early October 2007, only days before he received the Motion for Sanctions. Mr. Kanipe testified that he then appeared in court on October 18, 2007, and talked directly to the Debtor, making an offer to repay the money, but she would not accept it without talking to her attorney. Thereafter, on November 7, 2007, less than three weeks from that hearing, the Kanipes' attorney had returned the $230.00 to the Debtor's attorney. Mr. Kanipe's testimony stands before the court as undisputed.

It is also undisputed that Mr. Kanipe and Quick Money did not receive notice of the Debtor's bankruptcy case until September 4 or 5, 2007, after the Debtor's check was deposited on August 31, 2007. Shortly thereafter, Mr. Kanipe made several offers to return the funds to the Chapter 7 Trustee, but he was thwarted in that effort by the Debtor's attorney. The court finds that the Kanipes and Quick Money did not willfully exercise control over property of the Debtor, and that any violation of the automatic stay by their failure to return the $230.00 immediately was unwitting and not in any way willful. The Debtor is, therefore, not entitled to damages or attorney's fees.

12

An order consistent with this Memorandum will be entered.

FILED: February 19, 2008

                                      BY THE COURT

                                      */s/  RICHARD STAIR, JR.*

                                      RICHARD STAIR, JR.
                                      UNITED STATES BANKRUPTCY JUDGE